**UNITED STATES of America, Appellee,**

v.

**Paul LEVINE, Appellant.**

**No. 80–2648.**

United States Court of Appeals, Third Circuit.

Argued May 21, 1981.

Decided Aug. 17, 1981.

Rehearing and Rehearing In Banc Denied Sept. 24, 1981.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellant Section, Gregory P. Miller, Asst. U. S. Atty., (argued), Philadelphia, Pa., for appellee.

Thomas Colas Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellant.

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The primary question before us is whether a pretrial order of a district court denying a motion to dismiss an indictment on statute of limitations grounds provides a proper basis for an interlocutory appeal. Because we conclude that the pretrial order here is not a final decision for purposes of § 1291, we dismiss the appeal.

### I.

In March 1980 the government brought a nine-count indictment against appellant Paul Levine, alleging misapplication of funds from the Yellow Cab Company of Philadelphia, in violation of 18 U.S.C. § 660.[1] Levine moved to dismiss the indict-

---

1. 18 U.S.C. § 660 reads:

 Whoever, being a president, director, officer, or manager of any firm, association, or corporation engaged in commerce as a common carrier, or whoever, being an employee of such common carrier riding in or upon any railroad car, motortruck, steamboat, vessel, aircraft or other vehicle of such carrier moving in interstate commerce, embezzles, steals, abstracts, or willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, securities, property, or assets of such firm, association, or corporation arising or accruing from, or used in, such commerce, in whole or in part, or willfully or knowingly converts the same to his own use or to the use of another, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

ment on the ground that the five year statute of limitations governing § 660 offenses barred prosecution of all nine charges of embezzlement.

The history of the case goes back to August 1975, shortly after settlement of a civil suit over the control of the Yellow Cab Company. At that time, the F.B.I. commenced an investigation of Levine, who previously had been the chairman and chief executive officer of the Company. Two years later the F.B.I. referred the matter to an Assistant United States Attorney who initiated grand jury proceedings. Within a year the case was transferred to the Department of Justice Strike Force and assigned to Edward Levitt, who was already engaged in a separate examination of Yellow Cab's activities.

Levine became aware of the Strike Force's investigation and in May 1978 his counsel, Lawrence Lesser, contacted Levitt about the status of the investigation. As found by the district court, Lesser and Levine attempted to convince Levitt that Levine's activities had no criminal aspects. Levitt, however, was unpersuaded. Nevertheless, Levitt indicated he would be willing to explore a plea agreement, whereby Levine might avoid indictment or limit his criminal exposure. Levitt also raised the possibility of waiving the statute of limitations and referred Lesser to the case of *United States v. Wild*, 551 F.2d 418 (D.C. Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977), in which the Court of Appeals for the District of Columbia Circuit had recently held that a statute of limitations was waivable and, therefore, not a jurisdictional bar to prosecution.

Discussions ensued concerning what a waiver would involve and what information Levine might offer. The government, seeking a guilty plea, and Lesser, who wanted a *nolo contendere* disposition, were initially unable to reach any agreement. Because

The offense shall be deemed to have been committed not only in the district where the violation first occurred but also in any district in which the defendant may have taken or had possession of such moneys, funds, credits, securities, property or assets.

Lesser's expertise lay in the corporate field, Levine wanted additional time to consider the plea agreement and waiver proposals. After Levine consulted Donald Goldberg, an attorney specializing in criminal law, regarding the implications of a waiver of the statute of limitations, Levine, Lesser and Levitt met on July 5, 1978 and executed a waiver agreement. It reads:

## WAIVER OF STATUTE OF LIMITATIONS

PAUL LEVINE, a person who could be indicted in the United States District Court for the Eastern District of Pennsylvania on various counts of violation of Title 18, United States Code, Section 660, to wit, on various counts of embezzling, abstracting, wilfully misapplying, wilfully admitting to be misapplied and wilfully and knowingly converting monies, funds and other assets of the Yellow Cab Company of Philadelphia and the Yellow Cab Company of Camden, both of which are common carriers, during the period in which PAUL LEVINE operated and controlled the said companies, that is, during the period from on or about February 28, 1973, through on or about March 12, 1975,

HAVING BEEN ADVISED of the nature of the potential charges and of his rights, and having been expressly advised that the statute of limitations as set forth in Section 3282 of Title 18, United States Code, for the offenses which could be charged against him as specified above is five (5) years from the date of the occurrence of each of the alleged violations, and having been expressly advised that he could not be prosecuted for any of the above-described offenses which occurred more than five (5) years from the date of indictment absent his express waiver of the statute of limitations,

A judgment of conviction or acquittal on the merits under the laws of any State shall be a bar to any prosecution hereunder for the same act or acts.

DESIRING that an indictment against him not be immediately returned but that he be given a period within which to discuss this matter with his attorney, in the hope and belief that this matter may be settled in a manner satisfactory to all parties,

HEREBY WAIVES the five (5) year statute of limitations with regard to any indictable violation enumerated in Title 18, United States Code, Section 660, in the event that the statute of limitations as to any particular offense would, subsequent to July 4, 1978, serve as a bar to prosecution for said offense, and consents and agrees that should these charges be brought against him, either by Information or Indictment, he shall not raise the statute of limitations as a defense in said criminal proceedings. In so doing, PAUL LEVINE does not waive any defense based upon the statute of limitations with regard to any offense as to which a statute of limitations would be a bar as of July 4, 1978.

Despite the rather clear language of the waiver, some ambiguity nonetheless surrounds it. As drafted by the government, the arrangement appears to be intended solely for Levine's benefit—to afford him an opportunity to discuss with counsel how to proceed in order to achieve a more favorable disposition of the matter. Levine, however, contends that the government coerced his acceptance of the waiver by representing that an indictment was imminent. He argues that the waiver served the government's purposes as well, since it would enable Levitt to test what evidence Levine could offer and provide time to determine whether a nolo plea would be acceptable to the Justice Department.

Lesser and Levitt continued their talks, and various trade offs were discussed but never consummated. Then, in December 1978, Levitt learned that the Justice Department would not approve the nolo plea which Lesser sought. At that point communications came to a halt. In crediting Levitt's testimony—that Lesser would contact Levine and then recontact Levitt—the trial court found Lesser responsible for the breakdown in the negotiations in February 1979. Presumably, Levine and Lesser decided it was not in their interest to continue to bargain with Levitt who, they hoped, would lose interest if not reminded of the matter.

An indictment was returned in March 1980, more than a year after the negotiations ended. Because Levine's actions, and not the government's, largely accounted for the delay, the district court found that the time period was not so lengthy as to vitiate the waiver. Further, the trial judge concluded that the waiver was not a device to gain a tactical advantage over the accused or to avoid the government's obligation to prosecute reasonably promptly. The court explicitly found that Levine was not prejudiced by the circumstances.

Ultimately, the district court concluded that the first three counts in the indictment, covering acts through July 1973, were time-barred. The district judge reasoned that the waiver could not apply to these counts for which the government would not, as a practical matter, have been able to obtain an indictment but for the waiver. Employing the same logic, the district court determined that, had the government not engaged in good faith negotiations and forborne prosecution in reliance on the waiver, it would have been prepared to indict Levine on the remaining six counts, which related to more recent events, before the statutory period had run. Therefore, with respect to counts four through nine, the trial judge, in a pretrial order, denied Levine's motion to dismiss the indictment on statute of limitations grounds. Levine appeals from this pretrial order.

## II.

At the threshold, we are obligated to address a novel jurisdictional issue: whether in a criminal case a pretrial denial of a motion to dismiss on statute of limitations grounds is immediately appealable under the collateral order exception to the final judgment rule.

A fundamental principle of federal appellate jurisdiction, adopted in the First Judiciary Act, requires that review of *nisi prius* proceedings await their termination by final judgment.[2] Currently embodied in 28 U.S.C. § 1291, this congressional rule of finality, as well as the statutory policy against piecemeal appeals, has been applied with particular rigor in criminal cases be-. cause "the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *DiBella v. United States*, 369 U.S. at 126, 82 S.Ct. at 657, *quoted in Abney v. United States*, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977). Passage of time hampers the defendant's right to a speedy trial and his ability to defend himself, and is also antithetical to the public's concern to prosecute offenders quickly and the government's ability to prove its case. *See United States v. McDonald*, 435 U.S. 850, 854, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978); *Dickey v. Florida*, 398 U.S. 30, 42, 90 S.Ct. 1564, 1571, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring) (interests protected by Speedy Trial Clause).

The Supreme Court has carved three carefully calibrated exceptions from the prohibition against piecemeal appeals generally observed in criminal proceedings. In each instance, the collateral order doctrine, as articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), was transferred from its original civil setting to the criminal context. The district court in *Cohen* had determined that a state statute requiring a plaintiff in a stockholder's derivative action to post security did not apply in federal court. Defendants sought immediate review of the pretrial order on the ground that if the plaintiff proceeded without posting a bond and then lost the case, the harm to the defendants would be irreparable.

Giving 28 U.S.C. § 1291 a practical rather than a technical construction, the Supreme Court declared that the pretrial ruling on the inapplicability of the state statute requiring security was consistent with the finality requirement ‹of § 1291. Because the district court's ruling fell within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," 337 U.S. at 546, 69 S.Ct. at 1225, the Supreme Court held that the court of appeals had jurisdiction under § 1291.

■ Three distinct factors have emerged from the *Cohen* analysis which inform the classification of a district court order as a "final decision" for purposes of § 1291. Such an order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Abney v. United States*, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651; *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528. In applying the collateral order doctrine to criminal proceedings, the Supreme Court held in *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951), that a pretrial order denying a motion to reduce bail was subject to immediate review. Much like the question of posting security in *Cohen*, "an order fixing bail can be reviewed without halting the main tri-

---

**2.** First Judiciary Act, §§ 21, 22, 25, 1 Stat. 73, 83–85 (1789); *DiBella v. United States*, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962). Indeed, appeals as of right in criminal cases were not permitted until a century after the country's founding when Congress, in 1889, enacted a statute allowing appeals "in all cases of conviction of crime the punishment of which provided by law is death." Act of Feb. 6, 1889, 25 Stat. 656. A general right of appeal in criminal cases was not created until 1911. Act of Mar. 3, 1911, 36 Stat. 1133. Consequently, appellate review of criminal convictions was rarely authorized for a long period of our history.

al—its issues are entirely independent of the issues to be tried—and unless it can be reviewed before sentence, it never can be reviewed at all." 342 U.S. at 12, 72 S.Ct. at 7 (opinion of Jackson, J.).

Similar reasoning supported the holding in *Abney v. United States*, that a pretrial order rejecting a defendant's double jeopardy claim constituted the type of final decision needed to satisfy the jurisdictional prerequisite of 28 U.S.C. § 1291, 431 U.S. at 662, 97 S.Ct. at 2041. First, because the Double Jeopardy Clause guarantees against being twice put to trial for the same offense, the pretrial order amounted to "a complete, formal, and in the trial court, final rejection" of the defendant's claimed right not to be hailed into court again on the same charge. Second, the double jeopardy claim, which contests the government's very power to prosecute, is inherently separable from the merits of the impending trial. Third, the Court believed that significant aspects of the rights conferred by the Double Jeopardy Clause would be irreparably lost if the accused were forced to run the gauntlet a second time before an appeal could be taken. The possibility of an acquittal or of a post-conviction reversal on double jeopardy grounds could not undo the harm of forcing a defendant to endure the very trial the Double Jeopardy Clause was designed to pretermit.

Most recently, in *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), the Supreme Court extended the *Abney* principle from the double jeopardy context to claims based on the Speech and Debate Clause. The two clauses were viewed as analogous insofar as both guard against the burden of defending oneself in court as well as the consequences of litigation. Unless review were available before exposure to trial occurred, the protection which the respective clauses confer would be substantially diluted.

In the present appeal, Levine argues that his statute of limitations claim should be aligned with the *Abney* and *Helstoski* cases. He contends that the applicable federal statute, 18 U.S.C. § 3282, on its face, affords a comparable protection against trial itself, in addition to a bar against conviction and punishment. The statute reads:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Although Levine's position highlights facial similarities between the Double Jeopardy Clause and the limitations statute, illumination from another vantage point—the Supreme Court's refusal to permit immediate appeals of pretrial orders denying dismissal on speedy trial grounds—is required before we reach an answer regarding the scope of the statute's protection.

In contrast to its holdings in *Abney* and *Helstoski*, the Supreme Court found that application of the *Cohen* principles to pretrial denials of speedy trial claims did not compel the conclusion that the interests protected by that clause require immediate appeal for their vindication. *See United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). According to the Court, pretrial denial of a motion to dismiss on speedy trial grounds does not—as does the double jeopardy situation—entail a complete, formal and final rejection of defendant's claim at the trial court level. First, the question posed by the motion to dismiss remains open and is subject to change as facts emerge at trial; indeed, the determination whether delay has impaired an adequate defense is better answered on a hindsight basis. *See* 435 U.S. at 858, 98 S.Ct. at 1551. Second, the order, denying the motion to dismiss on grounds of speedy trial is not clearly separable from the principal trial issue of the accused's guilt. Rather, the extent of prejudice to the conduct of the defense is often intertwined with the nature of the crime and the events at trial. *See* 435 U.S. at 859, 98 S.Ct. at 1552. Third, unlike the Double Jeopardy Clause, the Speedy Trial Clause does not encompass a "right not to be tried," which would be irreparably lost absent pretrial

observance. The protection afforded against delay *before* trial is neither undercut nor compounded by the trial itself, and the right is as adequately respected by an acquittal as it would be by a successful pretrial motion.

The dilemma facing the Court in the case at hand arises from the Janus-faced nature of the statute of limitations claim: the interests protected are a hybrid of the considerations underlying the double jeopardy and speedy trial rights. Fairness to defendants would appear to be the primary consideration of statutes of limitations. "A limitation statute is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *See Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). In the criminal context this has often meant that the statute is not merely a legislative directive of repose but, analogous to the double jeopardy protection, an absolute bar to the sovereign's power to prosecute.[3] While perhaps not inviolable, "these statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971). At a minimum, because such statutes are the primary guarantee against bringing overly stale criminal charges, see *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966), they are, in the criminal field, liberally interpreted in favor of repose. *See United States v. Habig,* 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968).

Yet statutes of limitations secure rights which run to society as well as to the accused, and resemble many of the interests guarded by the Speedy Trial Clause. In fact, the Speedy Trial Clause and the limitations statutes work in tandem to prevent pretrial delay: the statutory period insures against pre-accusation delays and the Sixth Amendment controls the post-indictment time span. *See United States v. Marion,* 404 U.S. at 321, 323, 92 S.Ct. 455, 465, 30 L.Ed.2d 468. Both provisions shield defendants from endless anxiety about possible prosecution and from impairment of the ability to mount a defense. By encouraging speedy prosecution, they also afford society protection from unincarcerated offenders, and insure against a diminution of the deterrent value of immediate convictions, as well as the reduced capacity of the government to prove its case. *See United States v. Marion,* 404 U.S. at 320–25, 92 S.Ct. at 463–65, *Dickey v. Florida,* 398 U.S. 30, 42, 90 S.Ct. 1564, 1571, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). Whether constitutional or statutory, they are balances calculated to protect those who, on account of the passage of time, may have lost their means of defense, while simultaneously encouraging law enforcement officials promptly to investigate suspected criminal activity. *See Toussie v. United States,* 397 U.S. at 114–15, 90 S.Ct. at 859–60.[4]

---

**3.** *See Waters v. United States,* 328 F.2d 739, 743 (10th Cir. 1964) (statute of limitations may be raised for first time on appeal because limitation is jurisdictional). *Cf. Chaifetz v. United States,* 288 F.2d 133 (D.C.Cir.1960), *cert. denied on relevant portion,* 366 U.S. 209, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961) (court properly refused instruction on lesser included offense in tax evasion case because defendant could not be convicted of a crime for which the applicable statute had run). *Chaifetz* in dicta noted that "a statute of limitations in a criminal case . . . creates a bar to prosecution." *Id.* at 135–36. This, however, was overruled by *United States v. Wild,* 551 F.2d 418 (D.C.Cir.1977), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1978), which held that a statute of limitations constitutes an affirmative defense to be raised by the defendant rather than a jurisdictional bar to prosecution. *Accord, Biddinger v. Commissioner of Police,* 245 U.S. 128, 135, 38 S.Ct. 41, 62 L.Ed. 193 (1917) ("The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases."). *See also* Note, *Waiver of the Statute of Limitations in Criminal Prosecutions,* 90 Harv.L.Rev. 1550, 1554 (1977); *Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1185–86 (1950).

**4.** Society benefits from the focus on recent crimes with fresh evidence and a greater possibility of successful convictions; courts also are relieved of the burden of adjudicating long-

Unlike the Double Jeopardy Clause, then, which is designed solely for the protection of the accused, statutes of limitations "represent a legislative assessment of the relative interests of the State and the defendant in administering and receiving justice." *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468. Because statutes of limitations aim at securing a maximum degree of reliability and availability of evidence for defendants consonant with an adequate amount of time for investigation and prosecution, and often contain exceptions and provisos, they may provide less protection for defendants than the immutable double jeopardy prohibition.

■ Statutes of limitations further reflect an underlying legislative balance insofar as different crimes carry different time periods,[5] and the statutes are subject to tolling,[6] suspension[7] and waiver.[8] This suggests that, although the protection conferred by a statute of limitations may not be as "vague," "relative" and "amorphous" as the concept of speedy trial, see *Barker v. Wingo*, 407 U.S. 514, 521–22, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972), it is not as absolute as a double jeopardy or a Speedy and Debate Clause defense. Significantly, whereas the Double Jeopardy and Speech and Debate Clauses bar the sovereign from prosecuting at all, the Speedy Trial Clause and statutes of limitations do not insulate the defendant from trial *per se*. Rather, the latter two sources of protection concede that the accused is subject to prosecution and proceed to define the permissible bounds on the timeliness of prosecution.

Having established this backdrop, we now apply the *Cohen* factors to determine whether the present denial of a motion to dismiss on statute of limitations grounds should be immediately appealable.

### A.

Initially, we must determine whether the district court order conclusively resolves the disputed question. Levine argues that with respect to the class of cases to which he would make the interlocutory appeal rule applicable—the expiration of the statute of limitations must be manifest on the face of the indictment—the order would be a complete and final rejection of the defendant's claim in the district court. Despite the superficial attractiveness of such a position, we are disinclined to adopt it, at least as a general rule. Because crimes that appear to be barred on the face of an indictment may fit within an exception to the statute of limitations, Levine's demand for a rule of immediate appealability would often produce needless disruption.

Customarily, statutes of limitations embody exceptions that permit a tolling of the time period with respect to fugitives from justice. See 18 U.S.C. § 3290.[9] It is also

abandoned or tenuous crimes. *See* Note, *The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution*, 102 U.Pa.L.Rev. 630 (1954); *Developments, supra*, 63 Harv.L. Rev. at 1185–86.

5. Limitations periods generally relate directly to the seriousness of the crime, often with no limit applicable to capital offenses. *See* Note *Statute of Limitations in Criminal Law, supra*, 102 U.Pa.L.Rev. 636–45.

6. *See United States v. Muse*, 633 F.2d 1041, 1042 (2d Cir. 1980) (en banc) (timely-filed sealed indictment which is unsealed after statutory period has passed is not subject to dismissal unless defendant establishes prejudice linked to time between sealing and unsealing); *United States v. Michael*, 180 F.2d 55, 56–57 (3d Cir.), *cert. denied*, 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1949) (sealed indictment is timely even though the defendant is not ap-

prehended and the indictment is not made public until after the end of the limitations period).

7. *See* 18 U.S.C. § 3287 (Wartime Suspension Act).

8. *See United States v. Wild*, 551 F.2d 418 (D.C. Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977) (knowing and intelligent waiver of statute of limitations is valid); *United States v. Doyle*, 348 F.2d 715 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965) (plea of guilty waives statute of limitations defense); *United States v. Parrino*, 212 F.2d 919 (2d Cir. 1953), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954) (plea of guilty waives statute of limitations defense).

9. In a similar vein, courts have held that although an indictment is not made public until after the end of the limitations period, a timely-

possible for a defendant knowingly and intelligently to waive the statute of limitations, thus sanctioning a later indictment which, absent such a waiver, would be untimely. *See United States v. Wild*, 551 F.2d 418 (D.C.Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977); *United States v. Sindona*, 473 F.Supp. 764, 766 (S.D.N.Y.1979). Permitting immediate appeals of such facially time-barred indictments would favor persons who first sought sanctuary from investigation and then attempted to invoke the benefits of the statutory bar.

However, we need not determine the extent to which pretrial orders denying motions to dismiss on statute of limitations grounds dispositively resolve such issues. For in the present case, the government agrees that the district court's order is a conclusive determination of the limitations defense. Yet the present situation is unique. The trial judge, assuming that the limitations period had run, decided that the statute of limitations defense had nevertheless been validly waived with respect to certain counts. We are accordingly reluctant to expand the government's present concession with respect to the conclusiveness of the pretrial order to a rule of general applicability. While the limitations defense may be waived if not asserted before or at trial, the converse—that once raised and rejected it is not subject to reexamination by the trial court—simply does not hold.

The government, for instance, might plausibly assert that the defendant had waived his limitations defense only to find itself unable to demonstrate later an intentional relinquishment of a known statutory right. Moreover, the pretrial rejection of a limitations defense normally would not preclude the defendant from raising such a claim again should it appear in the course of trial that the government failed to carry the burden of proving that certain acts occurred within the statutory period.[10] Because the exact dates of continuing violations, conspiracies, or statutory tolling justified by flight from the jurisdiction, can often be properly evaluated only after development of the evidence at trial enables an accurate assessment of timeliness, denials of motions to dismiss based on statute of limitations claims do not unequivocally fit within the category of orders that are formally and completely rejected before trial.[11]

■ Nonetheless, in the case before us, all parties concede that the five-year statutory period has expired. Further, the district court conducted lengthy pretrial hearings prior to determining that the defendant had knowingly and intelligently, with the aid of counsel, waived his limitations defense. For purposes of our immediate review, the record indicates the execution of a voluntary waiver which forecloses assertion of the statute of limitations attack. Although Levine's waiver may prove to have unfavorable consequences, he cannot subsequently repudiate his bargain simply because hindsight indicates that a different strategy might have occasioned more desirable results. *Cf. Fontaine v. United States*,

filed sealed indictment will toll the statutory period until the defendant returns to the jurisdiction or is safely in custody. *See United States v. Muse*, 633 F.2d 1041, 1042 (2d Cir. 1980) (en banc); *United States v. Michael*, 180 F.2d 55, 56–57 (3d Cir., *cert. denied*, 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1949). While the limitations period would not have expired at the time of the sealing and thus might not technically fall within Levine's category of immediately appealable claims, it would for practical purposes appear to be time-barred if measured from the date the indictment was made public.

**10.** *See Grunewald v. United States*, 353 U.S. 391, 396 (1957); *United States v. DiSantillo*,

615 F.2d 128 (3d Cir. 1980) (indictment issued more than five years after alien's illegal entry is time barred, notwithstanding alien's continuing presence in this country); *United States v. Hankin*, 607 F.2d 611, 615 (3d Cir. 1979) (government failed to carry burden of proving that crime of making illegal contributions occurred within five years of indictment).

**11.** *See United States v. Stone*, 444 F.Supp. 1254, 1256 (E.D.Wis.) *aff'd*, 588 F.2d 834 (7th Cir. 1978) (trial judge deemed it inappropriate to resolve at the pretrial stage a defense of withdrawal from an alleged conspiracy because it is closely intertwined with general issue for trial).

411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973) (when defendant expressly represents that he is voluntarily waiving certain rights he may not ordinarily repudiate his statements to the sentencing judge). With the foregoing caveats, then, we accept the parties' concurrence that in this limited context the statute of limitations question is conclusively determined.[12]

### B.

The second *Cohen* criterion attempts to gauge whether the issue to be resolved is completely collateral to the primary claim that has been asserted.[13] Limitations periods are not always neatly severable from the merits of the case. The extent to which the limitations defense is intertwined with the facts of a case is perhaps most pronounced in continuing crimes such as embezzlement, which is in issue here, or instances of conspiracy, nuisance, or failure to register for the draft. The continuing course of conduct effectively tolls the statute with respect to the initial act—which may well embody all the elements of the crime—and it is only after the occurrence of the last allegedly criminal act that the statute begins to run.

As the Supreme Court noted in *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), which focused on proof of an overt act furthering a tax evasion conspiracy within the indictment period: "the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Id.* at 397, 77 S.Ct. at 970. Clearly, in such cases it is difficult to separate the limitations claim from the facts of the case and issues of guilt and innocence that will be established at trial.[14]

12. Nevertheless, we cannot ignore the due process aspects inherent in any statute of limitations. *Cf. United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (due process attack on preindictment delay raised before statutory period has run). Even though the district court determined that Levine had knowingly waived his right to raise the statute of limitations defense, trial events might suggest that the government should not be proceeding against him at this late a date. The district court was most troubled by the open-ended nature of the waiver; no time limitations controlled the government's ability to indict and try Levine. Precisely because an accurate assessment of possible prejudice resulting from Levine's unconditioned waiver can be evaluated only after a development of facts at trial, we do not believe that the parties' representations that the statute of limitations question has been conclusively determined should prevent the district judge from dealing with this issue, should he find it proper to do so, at some later date.

13. On first consideration, a statute of limitations defense would appear to fall within the group of objections and defenses roughly defined by Fed.R.Crim.P. 12(b), which a defendant may raise by motion before trial and "which are capable of determination without a trial on the general issue." In specifying the range of these pretrial motions, the Advisory Committee stated that "[t]hey include such matters as former jeopardy ... statute of limitations, immunity, lack of jurisdiction, failure of indictment or information to state an offense, etc." 18 U.S.C.A. Rule 12(b)(1) and (2), Notes of the Advisory Committee on Rules. Thus, like the double jeopardy claim in *Abney*, the statute of limitations defense may be collateral to, and separable from, the principal issue of guilt that will be resolved at trial. Rule 12(b), however, does not dispositively delineate what issues fall within the collateral order exception. Indeed, in *Abney* the Supreme Court held that an order denying a motion to dismiss an indictment for failure to state an offense—one of the 12(b) defenses theoretically resolvable pretrial—"is plainly not collateral in any sense of that term." 431 U.S. at 663, 97 S.Ct. at 2042.

14. *Pendergast v. United States*, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1943), also illustrates the inextricability of certain statute of limitations questions the main trial issues. In that case the majority declined to decide whether the conduct of the petitioners even constituted punishable contempt, but, assuming *arguendo* that it might, held that the statute of limitations had run. Other Justices believed that an act amounting to contempt within the meaning of the statute had occurred, but then differed on whether the statute of limitations barred prosecution or not. *See id.* at 421, 63 S.Ct. at 272. (Jackson, J.) (no bar); *id.* at 422, 63 S.Ct. at 272 (Frankfurter, J.) (prosecution barred).

Moreover, a central purpose of statutes of limitations—to prevent the government from instituting prosecutions after excessively long delays which may prejudice defendants by increasing the difficulty of marshalling evidence—is linked to protecting the truth and accuracy of the factfinding process at trial. *See Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). This helps to account for the inextricability of limitations claims from the course of events emerging at trial. And because the statute of limitations balances the government's prosecutorial needs against a defendant's interest in avoiding a stale prosecution, whether a claim is barred by the statute often involves questions of prejudice that are closely connected with the merits and may be assessed only after a trial. *Cf. United States v. MacDonald, supra* at 860, 98 S.Ct. at 1552 (similar balancing of interests of state and accused renders speedy trial claim inseparable from merits). Thus, this Court in *United States v. Michael*, 180 F.2d 55 (3d Cir. 1949), *cert. denied*, 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1950), held that a timely-filed sealed indictment satisfied the statute of limitations, even though the indictment was not made public until after the limitations period had expired. While the decision was predicated substantially on the meaning of when an indictment is "found" for purposes of the statute, we also determined that the defendant had demonstrated no prejudice arising from the 54-day delay in making the indictment public. Just as the factors of length of delay, reason for the delay, whether the defendant has asserted his right, and prejudice to the defendant from the delay must be weighed in assessing Speedy Trial claims,[15] the reasons for delay and the possibility of prejudice occasionally merit consideration in the statute of limitations context as well.[16] However, to estimate before trial the extent to which delay has impaired an adequate defense might well be a speculative endeavor.

*United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980) (en banc), illustrates this well. In *Muse*, the government filed and sealed an indictment against Muse and three others five months before the limitations period ended. The government knew of Muse's whereabouts during much of the post-indictment period but, fearing that his arrest would trigger flight by his co-conspirators, did not arrest him. The court unsealed the indictment almost a year after the statute had run; thereafter the four alleged conspirators were apprehended. Following a jury verdict of guilty, Muse appealed claiming that the delay in unsealing the indictment denied him the protection of the statute of limitations.

The Second Circuit, noting that the government had a substantial prosecutorial interest in keeping the indictment sealed beyond the limitations period, found that Muse demonstrated no basis for claiming prejudice during any portion of the post-sealing time. Significantly, the court of appeals relied heavily on the district court's observations of Muse's testimony. Since the trial judge found that Muse had not been prejudiced by any memory loss, the court of appeals concluded that Muse had no valid statute of limitations defense for the period following the sealing of the indictment. In fact, the trial court's determinations concerning prejudice permitted the Second Circuit to defer deciding whether prejudice should be calculated only from the post-limitations as opposed to the post-sealing portion of the period during which an indictment is sealed.

Were we deciding as an abstract matter whether statute of limitations defenses are collateral to the merits and susceptible to pretrial resolution, or whether such claims are affected by evidence and events at trial, we would be inclined to conclude that limi-

---

15. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

16. *Cf. United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (circumstances in which Due Process Clause, which

supplements statutes of limitations in protecting against oppressive delay, requires that an indictment be dismissed because of delay between commission of an offense and the initiation of prosecution).

tations defenses often intersect with matters that develop at trial. Consequently, denials of motions to dismiss on statute of limitations grounds would not generally satisfy the second *Cohen* criterion. But here, our acknowledgment of the parties' agreement that Levine's statute of limitations claim had been conclusively determined tends to undercut the logic and the applicability of the general rule. If the district court's disposition of the limitations claim is accepted as a final decision, then it necessarily is a discrete determination, separable from the merits. However, we must stress the unusual aspects of the order in the present case. The district judge, starting with the premise that the limitations statute had run with respect to all the counts charged in the indictment, found that Levine had validly waived the statute as to certain counts. To the extent that the court order embraced a finding of waiver as part of the limitations claim, that too could be regarded as sufficiently independent of the merits to warrant pretrial appellate review.

Much like plea bargaining, a waiver of the statute of limitations is a pretrial agreement between the state and the defendant.[17] Moreover, the bargains and negotiations underlying a waiver of a limitations statute, similar to the promises exchanged in guilty pleas, can be assessed independently of trial. While defendants can challenge guilty pleas on the basis that they were not voluntarily and intelligently made, they cannot raise claims of constitutional deprivations occurring antecedent to the plea, although such claims, if successful, might have substantially altered a trial outcome.

*See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Thus, when courts vacate guilty pleas it may be because threats of additional prosecution or threats regarding the use of false testimony have rendered them inherently involuntary; questions of guilt or innocence are not in issue.[18] *See also Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (because government did not keep promises made in negotiation of guilty pleas, either specific performance of the original plea agreement or withdrawal of guilty plea is required).

The pretrial hearing in the case at hand functioned analogously to an evidentiary hearing pursuant to Fed.Rule Crim.Proc. 11 by which federal courts establish the factual basis for guilty pleas. Here, the judge determined that the waiver was voluntary and knowing, and that the interests which may have motivated Levine to waive the statute were adequately served by an open-ended waiver inasmuch as the prosecution was in fact initiated within a reasonable time after the waiver. There was no finding of prosecutorial overreaching or of failure by the government to observe its part of the bargain.

Accordingly, insofar as the statute of limitations claim also comprehends the waiver of that defense, the issue was settled in an order completely separate from the merits of the action, consonant with the second *Cohen* criterion.

### C.

The third *Cohen* factor requires us to ascertain whether an important right will

---

17. Because waivers of limitations statutes, similar to guilty pleas, involve the relinquishment of important rights, it has been held that they should also be made with the advice of counsel and informed by an understanding of the consequences of waiver. *See United States v. Wild*, 551 F.2d 418, 425 (D.C.Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977) (knowing and intelligent waiver of statute of limitations is valid); *Cf. Moore v. Michigan*, 355 U.S. 155, 159, 78 S.Ct. 191, 193, 2 L.Ed.2d 167 (1957) (accused pleading guilty must be counseled absent an explicit waiver).

18. *See Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) (guilty plea induced by threats of United States Attorney to bring additional prosecutions is void because of its lack of voluntariness); *Waley v. Johnston*, 316 U.S. 101, 104, 62 S.Ct. 964, 965, 86 L.Ed. 1302 (1942) (plea coerced by threatening physical harm and use of false testimony is invalid); *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) (court will vacate plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence).

be lost, probably irreparably, if review must await a final judgment. There is, of course, value for almost any litigant in vindication prior to trial, irrespective of the substance of the claim asserted. What must be distinguished here is whether a statute of limitations defense, because of the importance and nature of the right involved, requires resolution before trial to safeguard such a right. Statutes of limitations create rights of unquestioned importance from the perspective of the accused in our criminal system. This distinguishes our country from England, where the doctrine that "no lapse bars the King" has made statutes imposing limitations on criminal prosecutions extremely rare.[19] Notwithstanding this English policy, criminal statutes of limitations appeared in America as early as 1652, were adopted for most federal crimes in 1790 and have similarly been applied to state crimes in the vast majority of the jurisdictions.[20] Although statutes of limitations embody historically important rights of repose and fairness for defendants which are fundamental to our system of criminal law, the rights they protect are not irreparably lost absent immediate review.

Significantly, statutes of limitations do not share the constitutional stature of the rights protected by interlocutory review in *Abney* and *Helstoski*. The importance of a right for purposes of immediate appealability does not, of course, turn automatically on whether it has constitutional dimensions. In *Cohen*, the source of the collateral order

doctrine, the right to security for costs was not a constitutional matter but an interest whose legal and practical value would be destroyed if not vindicated before trial. Yet in the criminal field, where delay is detrimental to communal concerns, the Supreme Court has carefully accorded only rights with constitutional origins the protection of interlocutory review.[21]

While courts of appeal have not consistently adhered to this distinction, the deviations have been minor. Thus, this Court, based on the holding in *Ashe v. Swenson*, 397 U.S. 436 (1970), that the Fifth Amendment guarantee against double jeopardy embodies the doctrine of collateral estoppel, concluded that interlocutory appeal of a claim that collateral estoppel barred retrial of a charge, based on facts previously established in the defendant's favor by a jury, was proper in light of *Abney*. See *United States v. Venable*, 585 F.2d 71, 75 (3d Cir. 1978).[22] A parallel extension of the *Helstoski* rationale was recently employed by the Second Circuit in permitting an interlocutory appeal of a congressman's challenge to an indictment based on separation of powers as well as Speech and Debate Clause grounds. See *United States v. Myers*, 635 F.2d 932, 935–36 (2d Cir. 1980).[23]

Only the Ninth Circuit has ventured beyond the perimeters of the constitutional claims raised in *Stack, supra, Abney, supra,* and *Helstoski, supra*. In a recent spate of cases, that circuit has permitted immediate

---

**19.** See Note, *The Statute of Limitations in Criminal Law, supra*, 102 U.Pa.L.Rev. at 630.

**20.** *Id.* at 631–32. See also Charter and Laws of the Province of Pennsylvania 1682–1700 at 173–4 (George, Neod and McComant eds. 1879); 1 Laws of the United States 113, § 32 (1789–91). Only South Carolina and Wyoming have no statutes of limitations.

**21.** See *Stack v. Boyle, supra; Abney v. United States, supra; Helstoski v. United States, supra*.

**22.** Even this minor amplification of *Abney* appears to have had its limits established by *United States v. Mock*, 604 F.2d 336, 337–41 (5th Cir. 1979), which denied interlocutory appeal when the collateral estoppel claim would at

most suppress some evidence but not preclude trial on the charge.

**23.** The Second Circuit had earlier stretched the logic of *Abney* to permit interlocutory review of a claim that the government's indictment violated a prior plea bargain which contained a promise not to prosecute the defendant for the same crimes later. See *United States v. Alessi*, 536 F.2d 978, 980–81 (2d Cir. 1976). However, in a subsequent interlocutory appeal by the same defendant, the circuit questioned the wisdom of its recent decision. Although the panel adhered to the holding in *Alessi I*, it indicated that were the issue open in the circuit, it would dismiss for want of jurisdiction. *United States v. Alessi*, 544 F.2d 1139, 1152 (2d Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976).

appeals of claims of vindictive prosecution, *United States v. Griffin*, 617 F.2d 1342, 1345–46 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980); *United States v. Burt*, 619 F.2d 831, 835 (9th Cir. 1980), and of selective prosecution,[24] see *United States v. Wilson*, 639 F.2d 500, 502 (9th Cir. 1981), on the grounds that such claims satisfied the three *Cohen* criteria.[25] In contrast, the Court of Appeals for the District of Columbia Circuit has explicitly rejected the Ninth Circuit's analysis. Reasoning that the prosecutorial vindictiveness proscribed by the Supreme Court in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), did not create a right at the indictment stage not to be tried at all, the Court held that the third *Cohen* criterion of irreparable harm was not satisfied. *See United States v. Brizendine*, slip op. No. 81–1196 at 4 (D.C.Cir. July 17, 1981). And from a practical standpoint, the Court found that "for purposes of interlocutory appeal, appellants' due process claims were indistinguishable from countless other allegations of unfairness in the plea bargaining process that could be made by defendants." *Id.* at 20.[26] Nor are such pragmatic considerations inconsequential in the criminal justice system, where other important interests, such as those embodied in the speedy trial policy, are frustrated by the delay incident to interlocutory review. As the Ninth Circuit has, perhaps belatedly, ac-

knowledged, "[p]romiscuous resort to interlocutory appeals following *Griffin* has been counter-productive." *See Wilson, supra*, at 502 n. 1.

█ Just as the *Brizendine* court determined that a claim of prosecutorial vindictiveness does not implicate a right to be free from prosecution, we conclude that the limitations statute here creates a safeguard against unfair convictions arising from delinquent prosecutions but does not entail a right to be free from trial. Therefore, the irreparable harm criterion which is needed to justify immediate appealability cannot be met. Indeed, the history, purposes and language of limitations statutes suggest that, unlike Double Jeopardy and Speech and Debate Clause claims, these laws create time and manner restrictions on, rather than permanent barriers to, prosecution.

Looking to the statutory language, Levine argues that the statute is absolute: "no person shall be prosecuted, tried, or punished for any offense." 18 U.S.C. § 3282. But the beginning of that very provision undermines its own completeness, for it stipulates: "Except as otherwise expressly provided by law...." To an extent, the potential for changes and exceptions to any limitations period rests on the statutory as opposed to the constitutional nature of the right.[27] However, limitations

---

**24.** Distinguishable from the decisions focusing on prosecutorial vindictiveness is *United States v. Yellow Freight Systems, Inc.*, 637 F.2d 1248, 1250–51 (9th Cir 1980), which held that denial of a claim alleging prosecution of an "infamous crime" by information in violation of the indictment clause of the Fifth Amendment created an immediately appealable order. There the claim had constitutional dimensions. And like the bail allegations in *Stack*, an infringement of the right to indictment by a grand jury could only be vindicated prior to trial.

**25.** [Although appealability was originally granted in the belief that the claim of vindictiveness "involves a right to be free from prosecution itself, rather than merely to be free from subsequent conviction," *Griffin, supra*, at 1345, the latest case, *Wilson* suggests some retrenchment from this position. It notes that "selective prosecution, as much as vindictive prosecution, *possibly* involves a right to be 'free

from prosecution itself,'..." *Wilson, supra* at 502. (emphasis added).]

**26.** The Supreme Court decision in *Flynt v. Ohio*, —— U.S. ——, 101 S.Ct. 1958, 68 L.Ed. 489 (1981) implicitly validates the stance of the Court of Appeals for the District of Columbia Circuit that claims of selective prosecution can be adequately remedied at the postconviction stage. Although the holding in *Flynt*—that 28 U.S.C. § 1257 does not permit interlocutory federal review of allegedly selective prosecution by the state—was grounded in federalism concerns, a determination that postconviction relief was inadequate because subjection to trial would create irreparable harm might have altered the decision.

**27.** Notably, limitations respecting the same crime have changed over time, different crimes carry different time periods, and valid exceptions to the statutory bar exist. From 1790 to

claims are also analytically distinct from the claims in *Abney* and *Helstoski.* While the statutory provisions establish restrictions on the state's ability to prosecute, they do not—like the constitutional guarantees— confer immunity from prosecution. Rather, the limitations statutes acknowledge the state's right to try certain persons, but then set boundaries on the exercise of that power.

Further, the policies behind the double jeopardy protection and statutes of limitations emphasize the differing degree to which each proscribes the actual trial. Most of the concerns encompassed by the Double Jeopardy Clause focus on the *trial process* itself. Thus, the ban on reprosecution after acquittal respects the jury verdict and provides a criminal law analogue to res judicata finality concepts. The prohibition on reprosecution after conviction prevents overly aggressive prosecutors from forum shopping among judges in search of a desirable sentence. Most importantly, the rule against reprosecution regardless of outcome, insures that the trial process does not become an instrument of harassment and oppression in the hands of an all powerful government.[28]

▮ Limitations statutes, however, are intended to foreclose the potential for *inaccuracy* and *unfairness* that stale evidence and dull memories may occasion in an unduly delayed trial. They provide relief from extended pretrial anxieties and, by encouraging investigation of recent crimes, contribute to a rational allocation of prosecutorial resources. Like the Speedy Trial Clause, for which "it is the delay before trial, not the trial itself, that offends against the constitutional guarantee,"[29] it is primarily concerns of prosecutorial fairness and promptness, in contradistinction to

insulation from repeated trials, that underlie limitations statutes. Consequently, pretrial review is neither critical nor always helpful in securing those interests.

An old Supreme Court case addressing statutes of limitations issues aids in distinguishing between rights which create immunity from prosecution and whose preservation demands pretrial review, and limitations periods which channel procedural discretion but do not totally remove the possibility of trial. In *United States v. Cook,* 84 U.S. (17 Wall.) 168, 21 L.Ed. 548 (1872), which centered on a rather technical pleading rule, the Court held that a defendant must raise the statute of limitations by special plea, which can be equated to today's affirmative defense. The Court maintained that even if the indictment on its face was time barred and even if the particular limitations statute did not contain any exception, the trial court should not countenance sustaining a demurrer pretrial. Such a premature disposition of the issue would "preclude the prosecutor from giving evidence, as he would have a right to do, under the general issue, to show that the offense was committed within . . ." the statutory period. Instead of requiring pretrial review to safeguard the right of the accused to be free from trial, the Court found trial necessary for an adequate airing of the limitations issue.

The continuing vitality of *Heike v. United States,* 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821 (1910), also attests to the relevance of distinctions between statutory and constitutional immunity from trial. Having testified before a grand jury under a statutory grant of transactional immunity, Heike claimed immunity from a later prosecution concerning those very matters. Yet the Court declared that

---

1876, the general limitation applicable to noncapital offenses was two years. It then remained at three years until 1954 at which time it was changed to five years. 18 U.S.C. § 3282. *See also Bridges v. United States,* 346 U.S. 209, 216, 73 S.Ct. 1055, 1059, 97 L.Ed. 1557 (1953).

**28.** *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2672, 23 L.Ed.2d 656 (1969); Western

& Drubel, *Toward a General Theory of Double Jeopardy,* 1978 S.Ct.Rev. 81; Note, *Twice in Jeopardy,* 75 Yale L.J. 262, 278 (1965).

**29.** *See United States v. MacDonald,* 435 U.S. 851, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978).

the statute does not intend to secure to a person making such a plea immunity from prosecution, but to provide him with a shield against successful prosecution, available to him as a defense, and that when this defense is improperly overruled it may be a basis for the reversal of a final judgment against him . . . . Such promise of immunity has not changed the Federal system of appellate procedure, which is not affected by the immunity statute, nor does the immunity operate to give a right of review upon any other than final judgments. *Id.* at 431, 30 S.Ct. at 542.

In the instant case, where there is no absolute immunity from prosecution but only a qualified relief linked to prosecutorial timeliness, there is even less reason for a statutory right to supercede the normal requirements of appellate review.

The distinction between the right to be tried only under certain conditions of time or place and the right not to be tried at all is further exemplified by *Parr v. United States,* 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1955). Parr was indicted in Corpus Christi for attempted evasion of federal taxes. The district court granted his motion to transfer to Laredo because local prejudice against Parr, a prominent political figure, foreclosed a fair trial in Corpus Christi. Thereafter the government, seeking to avoid trial in Laredo, obtained a new indictment in Austin. Its subsequent motion to dismiss the initial indictment was granted and Parr immediately appealed. The Supreme Court concluded that the order dismissing the original indictment was clearly not a final judgment, nor did it fall within the *Cohen* exception to the rule of finality. Acknowledging that Parr might be correct in the contention that the Laredo transfer precluded the government from proceeding elsewhere, the Court nevertheless believed that Parr could secure adequate review and protection of this alleged right upon appeal from a judgment of conviction under the Austin indictment. Further, there was no irreparable harm to Parr's claimed right to be tried only in Laredo, for although he would first have to

hazard a trial in Austin, "bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." 351 U.S. at 519–520, 76 S.Ct. at 916–917, *citing Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

Notably, *Parr* centered on rights granted by Fed.R.Crim.P. 21, which, like the statutory protection here, does not present a constitutional claim. The venue rule in *Parr* and the time limit in the present case were similarly designed to give defendants a fair and impartial trial. While both rules impose limits on the time or place of prosecution in order to prevent governmental harassment, neither unqualifiedly provides a right not to be tried at all. And the consequences of finding no finality for purposes of § 1291 in *Parr* are even more drastic: requiring Parr to be tried under a possibly invalid indictment at Austin before appellate review of the Laredo dismissal is available could ultimately force him to undergo two trials, one at Austin and another at Laredo. Inasmuch as denial of immediate review in *Parr* was held not to constitute irreparable harm, it is unlikely that irreparable harm exists in the case before us.

Moreover, many of the policies served by statutes of limitations may be respected even though the statute has run. The factual configuration in *Wild, supra,* and perhaps Levine's situation as well, are illustrative of this situation. In *Wild,* the Watergate Special Prosecution Force was prepared to indict a Gulf Oil executive for violations of the campaign contribution laws before expiration of the statutory period. Wild's attorney, hoping to obtain a more favorable disposition, proposed that Wild waive the statute of limitations to allow both sides to continue plea bargaining. The court held that the defendant had validly waived the statutory defense for his own benefit. In so doing, the court reasoned that the government had fulfilled the statutory policy of encouraging prompt investigation of criminal activities—it was ready to seek an indictment before the statute

had run. Nor was the defendant handicapped in mounting his defense on account of a lapse in time or destruction of evidence, for he was on notice that the government intended to proceed against him. 551 F.2d at 419–21, 425. Thus, the statutory purpose of protecting an accused from the burden of defending against stale claims was satisfied, for if anything the defendant was responsible for the delay. If the interests which statutes of limitation serve can be in some instances effectively observed notwithstanding the running of the statute, it is difficult to argue that, in the face of a pretrial order denying dismissal on timeliness grounds, such rights require the extraordinary protection of interlocutory review.

Similarly, Levine was quite clearly on notice that the government intended to indict him, and was gathering evidence in the hope of exchanging information for a *nolo contendere* disposition. There was little danger then of lost or destroyed evidence. By waiving the statute, Levine took part in controlling the timing of the prosecution and was a major contributor to any alleged delay. Further, the government fulfilled its obligations with respect to the limitations statute—it indicated that it was ready to indict Levine. Questionable as it is whether any rights insured by the statute of limitations were abridged, it is certain that an accurate assessment of undue delay or possible prejudice depends upon the facts elicited at trial. Immediate review would not safeguard interests otherwise irreparably lost and is in fact a premature point from which to determine whether a valid waiver nevertheless occasioned substantial prejudice.

As the Supreme Court noted in *MacDonald*, simply because dismissal of the indictment is the proper remedy when certain rights have been violated does not mean that a defendant enjoys a "right not to be tried" which can be secured only by interlocutory appellate review. *See* 435 U.S. at 860 n. 7, 98 S.Ct. at 1552.[30] In most instances, permitting interlocutory appeals from statute of limitations claims would only increase delay before trial and exacerbate the very problems of memory loss and stale evidence which such statutes were designed to minimize. Moreover, immediate appeals would chill a prosecutor's willingness to enter into waiver agreements such as Levine's which are intended for a defendant's benefit. If defendants who waive the statute and are later indicted, are then allowed to file and appeal motions to dismiss on timeliness grounds, the prospect of such protracted proceedings offers the government little incentive to enter into potentially desirable waiver arrangements.

 Since pretrial orders involving statute of limitations challenges often do not conclusively determine the disputed question, cannot always be separated from the principal trial issue, and do not entail an irreparable loss of rights, denials of motions to dismiss on statute of limitations grounds fail to fulfill in large part the three *Cohen* criteria. In the present case, the limitations issue was determined in a pretrial hearing essentially severable from the merits. But because of the absence of an irreparable loss of rights, we hold that the order is not immediately appealable under § 1291.

### III.

Having determined that the denial of the motion to dismiss on the statute of limitations grounds did not fall within the *Cohen* exception to "final decisions" we have no jurisdiction to proceed to the latter two questions raised in this appeal since these issues cannot independently survive the *Cohen* analysis.[31]

---

**30.** Dismissal also occurs when the indictment is defective or the only inculpatory evidence was seized in violation of the Fourth Amendment. Yet the courts have never concluded that because dismissal would be the appropriate sanction for certain wrongs, denials of motions premised on such claims create an automatic right to pursue an interlocutory appeal.

**31.** Levine's omnibus pretrial motion contained two further issues: whether the statute of limitations is waivable, and, if so, whether the waiver in this case violated due process. Levine, however, has not attempted to argue that the determination whether the statute of limitations can be waived is itself an order falling within the *Cohen* exception. Rather, this ques-

### IV.

The appeal will be dismissed, and the case remanded for further proceedings.

---

tion is interwoven with the question of the timeliness of the indictment. Since we decided that the denial of the statute of limitations challenge does not fit the meaning of a final order for purposes of § 1291, the question of waiver of such a defense, necessarily, cannot independently meet the requirements of a collateral order.