

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-1998

# United States v. Midgley

Precedential or Non-Precedential:

Docket 97-7402

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"United States v. Midgley" (1998). *1998 Decisions*. Paper 87.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/87

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7402

UNITED STATES OF AMERICA,

      Appellant

v.

RAYMOND M. MIDGLEY

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 91-cr-00169)

Argued January 29, 1998

Before: SCIRICA, ROTH and RENDELL, Circuit Judges

(Opinion filed April 23, 1998)

        David M. Barasch
        United States Attorney
        Bruce Brandler (Argued)
        Assistant U.S. Attorney
        U.S. Attorney's Office, Federal
         Building
        228 Walnut Street
        P.O. Box 11754
        Harrisburg, PA 17108
        Attorneys for Appellant

            James V. Wade, Esquire
            Federal Public Defender
            Daniel I. Siegel, Esquire (Argued)
            Assistant Federal Public Defender
            Middle District of Pennsylvania
            100 Chestnut Street, Suite 306
            Harrisburg, PA 17101
            Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

The United States appeals from an order entered by the
U.S. District Court for the Middle District of Pennsylvania,
denying a motion to reinstate dismissed counts of an
indictment against the appellee, Raymond Midgley. The
government had dismissed the counts after Midgley pled
guilty to one charge of the indictment pursuant to a plea
agreement. Midgley subsequently made a successful
collateral attack on his conviction. The district court denied
reinstatement of the dismissed counts on the grounds that
the statute of limitations had run. In seeking reversal, the
government asks us to resolve a conflict among our district
courts as to whether dismissed counts of an indictment
may be reinstated under these circumstances. The district
court had jurisdiction under 28 U.S.C. S 2255, and we have
appellate jurisdiction pursuant to 28 U.S.C. S 1291.
Because we find insufficient grounds for withholding
application of the statute of limitations, we will affirm the
order of the district court.

I. FACTS

On September 3, 1991, a federal grand jury returned an
indictment against Raymond Midgley, charging six counts
of controlled substance and firearms violations. Included in
the indictment was a charge that Midgley had used or
carried a firearm during and in relation to a drug trafficking
crime in violation of 18 U.S.C. S 924(c).1 Prior to trial,
_____

1. An investigation had revealed that Midgley was involved in drug
trafficking, and that he carried firearms during drug sales. During

Midgley entered into a plea agreement with the government in which he agreed to plead guilty to the count of violating S 924(c) in exchange for dismissal of the remaining counts of the indictment.2 The agreement contained no provision for waiver of Midgley's statute of limitations defense as to the counts to be dismissed. Midgley entered his guilty plea and was sentenced on October 5, 1992, to five years imprisonment, the statutory minimum. The government dismissed the remaining counts of the indictment on the same day. Midgley was incarcerated on October 23, 1992, and commenced service of his sentence.

On December 6, 1995, the United States Supreme Court held in Bailey v. United States, 516 U.S. 137 (1995), that in order to establish that a defendant "used" afirearm within the meaning of S 924(c), the government must show not mere possession, but active employment of the firearm by the defendant. On May 23, 1996, some 5 years and 3 months after commission of his offenses, Midgleyfiled a motion pursuant to 28 U.S.C. S 2255 to vacate his sentence in light of Bailey. Although the government conceded that

_____

execution of a search warrant at his residence, a handgun was found among drugs and drug paraphernalia. The sixth count of Midgley's indictment charged a violation of 18 U.S.C. S 924(c)(1), which provides:

> Whoever, during and in relation to any crime of violence or drug
> trafficking crime . . . for which he may be prosecuted in a court
of
> the United States, uses or carries a firearm, shall, in addition to
the
> punishment provided for such crime of violence or drug trafficking
> crime, be sentenced to imprisonment for five years. . . .

2. Count I charged that Midgley distributed heroin on or about December 14, 1990, in violation of 21 U.S.C. S 841(a)(1). Count II charged that Midgley distributed marijuana on or about February 10, 1991, in violation of 21 U.S.C. S 841(a)(1). Count III charged that Midgley distributed L.S.D. on or about February 11, 1991, in violation of 21 U.S.C. S 841(a)(1). Count IV charged that Midgley possessed marijuana with the intent to distribute on or about February 11, 1991, in violation of 21 U.S.C. S 841(a)(1). Count V charged that Midgley, a previously convicted felon, possessed a .38 caliber handgun on or about February 11, 1991, in violation of 18 U.S.C. S 922(g)(1). Count VI, to which Midgley had pled guilty, charged that he violated 18 U.S.C. S 924(c) by using and carrying a firearm during and in relation to a drug trafficking crime on or about February 11, 1991.

3

Bailey required Midgley's sentence to be vacated, it requested that the court reinstate the dismissed counts of his original indictment. The U.S. District Court for the Middle District of Pennsylvania, Kosik, J., granted Midgley's S 2255 motion but refused to reinstate the dismissed counts. In a Memorandum Opinion dated March 11, 1997, No. 96-7494, we affirmed the order but stated that the disposition was "without prejudice to whatever rights the government may have to pursue in the district court its application to reinstate the dismissed counts of Midgley's indictment and without prejudice to Midgley's right to raise the statute of limitations in opposition to that motion or a new indictment." On March 21, 1997, the government filed a motion to reinstate the dismissed counts which the district court denied on July 31, 1997. The government now appeals.

II. DISCUSSION

Our review of a district court's legal determinations and its application of legal precepts to facts is plenary. Epstein Family Partnership v. KMart Corp., 13 F.3d 762, 766 (3d Cir. 1994).

The general federal statute of limitations applies to all offenses charged in Midgley's indictment. That statute provides:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. S 3282 (1994). On appeal, the government asks us to hold that this statute does not prevent reinstatement of any or all of the five dismissed counts of the original indictment against Midgley, notwithstanding that more than five years have elapsed since the commission of the underlying offenses. The government argues alternatively that (1) the literal terms of the statute do not apply to counts which are brought within five years, dismissed, and then reinstated; (2) the statute should be tolled under principles of contract law and equity because Midgley breached the plea agreement; and (3) the statute should be

4

tolled as a matter of policy in order to prevent abuse of the plea bargain process. Whether the statute of limitations prevents reinstatement of dismissed counts of an indictment when the defendant's guilty plea conviction is vacated is a question of first impression before this Court.

Two district judges in the Middle District of Pennsylvania have addressed this issue prior to the case sub judice, with contrary results. In United States v. Gaither, 925 F. Supp. 50 (M.D. Pa. 1996) (Rambo, C.J.), the defendant, pursuant to a written plea agreement, pled guilty in 1990 to violating S 924(c). In 1996, after the defendant's conviction was vacated under Bailey, the government sought to reinstate a dismissed count of the original indictment. Despite sympathy for the government's position that the defendant would "reap a windfall" by evading the dismissed charge, the court maintained that the "overwhelming concern" of the policy underlying the statute of limitations was protection of the accused. For this reason, the court refused to toll the statute. 925 F. Supp. at 53–54. Only weeks later, however, in United States v. Viera, 931 F. Supp. 1224 (M.D. Pa. 1996) (Caldwell, J.), another judge in the same district held on nearly identical facts3 that the government could reinstate dismissed charges after expiration of the limitation period where the government was "not at fault" and "the defendant has upset what the government reasonably understood to be a final disposition of a criminal matter." 931 F. Supp. at 1230–31.

Much of the analysis in Gaither was embraced by the Second Circuit in United States v. Podde, 105 F.3d 813 (2d Cir. 1997), vacating United States v. Reguer, 901 F. Supp. 525 (E.D.N.Y. 1995). In Podde, nearly nine years after the alleged misconduct, the defendant's guilty plea conviction for structuring financial transactions under 31 U.S.C. S 5313 was reversed. The government then sought to reinstate dismissed charges of conspiracy and wire fraud. Podde, 105 F.3d at 815. In vacating a district court order

_____

3. In Viera, after the defendant's conviction was vacated in light of Bailey, the government in 1996 requested reinstatement of two dismissed counts based on acts committed in May of 1990. 931 F. Supp. at 1226.

5

permitting reinstatement, the Second Circuit rejected arguments similar to those offered by the government here in favor of the rule that the statute of limitations applies to counts of an indictment dismissed pursuant to a plea agreement and that the statute is not tolled following vitiation of the agreement merely because the government "acts diligently and without fault." Id. at 819.

A. Applicability of the Statute of Limitations

Section 3282 itself does not indicate whether the limitation period applies to reinstated counts of an indictment which was originally "found" within five years. The government maintains that a district court may simply vacate the order dismissing the original indictment, at which point "the indictment becomes pending as though it had never been dismissed." In this posture, the statute of limitations would be inapplicable on its face, and the result that follows would comport with the policy objectives behind the statute. We disagree with both contentions.

A statute of limitations "limit[s] exposure to criminal prosecution to a certain fixed period of time following the occurrence of " criminal acts. Toussie v. United States, 397 U.S. 112, 114 (1970). Limitations are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Id. at 114-15. "Limitations statutes . . . are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." United States v. Levine, 658 F.2d 113, 127 (3d Cir. 1981) (emphasis in original).

In order to adhere to this mandate and still determine that a dismissed indictment is "found" within the meaning of S 3282, it would be necessary to conclude that a defendant could never be prejudiced in his defense by the delay in prosecution that occurs between the times of dismissal and reinstatement. Yet this proposition is inherently unsound, because any statute of limitations incorporates an "irrebuttable presumption" that, beyond

6

the period of limitation, "a defendant's right to a fair trial would be prejudiced." United States v. Marion, 404 U.S. 307, 322 (1971). Absent a statute of limitations, an indefinite suspension of prosecution impairs a defendant's constitutional rights and prolongs the defendant's "anxiety and concern" over the pending charges. See Klopfer v. North Carolina, 386 U.S. 213, 222 (1966) (holding State's nolle prosequi procedure to be an unconstitutional violation of right to speedy trial where statute of limitations was tolled during pendency).

Other circuit courts faced with this issue have held that the terms of S 3282 do apply to dismissed counts of an indictment which was brought within the limitation period. Podde, 105 F.3d at 818 (holding that "the statute of limitations begins to run again once an indictment is dismissed"); United States v. Davis, 487 F.2d 112, 118 (5th Cir. 1973) (applying Klopfer, and holding that dismissal of criminal charges "does not impair the protection afforded by the statute of limitations," which is a defendant's "primary protection" against prosecutorial delay). We agree that, for purposes of S 3282, counts of an indictment do not survive a dismissal. We therefore reject the government's position that the statute does not apply to reinstatement of dismissed counts.

This conclusion is particularly compelling when we examine the policy goals served by a statute of limitations. The government argues that reinstatement of the dismissed counts would be faithful to the policy concerns underlying the statute because (1) the initial indictment against Midgley fulfilled the objective of providing notice to the defendant, (2) no concerns of prosecutorial unfairness or dilatory conduct are implicated, and (3) any remaining concerns involving protection of the defendant do not apply where the defendant "created the problem."4

_____

4. Bailey was decided in December of 1995, approximately three months prior to the expiration of the limitation period applicable to Midgley's dismissed counts. The government suggests that it is no coincidence that Midgley delayed filing his S 2255 petition until May of 1996, three months after the limitation period had run. We express no opinion as to whether Midgley's delay "created the problem" here.

The government is correct that giving notice to the defendant and discouraging prosecutorial delay are both important policies served by a statute of limitations. We do not disagree that those goals would still be fulfilled were reinstatement of the dismissed charges permitted here. Yet in terms of policy, our primary focus must be upon the defendant. While the Supreme Court stated in Toussie that "several considerations" formed the policy basis of a statute of limitations, it explained first that the limitation protects the accused "from having to defend themselves against charges when the basic facts may have become obscured by the passage of time," and added that the time limit "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." Toussie, 397 U.S. at 114-15 (internal quotations and citations omitted) (emphasis added).

Following Toussie, the Court instructed us in Marion that

> the applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges. Such statutes represent legislative assessments of relative interests of the State and the defendant in administering justice; they are made for the repose of society and the protection of those who may during the limitation have lost their means of defence.

Marion, 404 U.S. at 322 (internal quotations, citations, brackets, ellipses and footnotes omitted).

In evaluating Toussie and Marion, the Second Circuit concluded that the statute of limitations "exists primarily to protect the rights of the defendant," and the fact that a defendant's guilty plea conviction was later vacated by a Supreme Court decision "in no way affects the fact that his defense to the original charges may have been jeopardized by the passage of time." 105 F.3d at 819-20. We agree that the primary purpose of the statute of limitations is to protect the ability of the accused to present an effective defense to the charges against him. Consequently, applying

8

the terms of S 3282 to dismissed counts of an indictment best fulfills that objective.5

## B. Tolling

The government next argues that, even if the statute of limitations applies to reinstated counts, the statute should be tolled because Midgley breached his plea bargain agreement. In exchange for Midgley's guilty plea to one charge, the United States dismissed the five other charges it now seeks to reinstate. According to the government, by successfully moving to vacate his guilty plea conviction, Midgley has "revoked his acceptance" of the plea agreement and the government should be free to withdraw its part of the bargain. See United States v. Reguer, 901 F. Supp. 525, 529 (E.D.N.Y. 1995), vacated, United States v. Podde, 105 F.3d 813 (2d Cir. 1997). The government thus seeks an equitable restoration of the parties to the status quo ante by a tolling of the statute of limitations from the time of the dismissal order.

We have observed that criminal statutes of limitations are subject to tolling, suspension, and waiver. United States v. Levine, 658 F.2d 113, 119-121 (3d Cir. 1981). Equitable tolling of a statute of limitations may apply where a complaint succeeds a filing deadline through either the complainant's benign mistake or an adversary's misconduct. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). "[E]quitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has "in some extraordinary way" been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir. 1983) (citations omitted). Although the doctrine of equitable tolling is most typically applied to limitation periods on civil actions, see Irwin, 498 U.S. at 95, "there is no reason to distinguish between the rights protected by

_____

5. Because we hold that the dismissed counts may not be reinstated, we need not reach the issue of whether facts admitted to by Midgley in his guilty plea to Count VI might constitute admissions as to elements of these other offenses.

9

criminal and civil statutes of limitations." Powers v. Southland Corp., 4 F.3d 223, 233 (3d Cir. 1993).

Federal courts invoke the doctrine of equitable tolling "only sparingly," and will not toll a statute because of "what is at best a garden variety claim of excusable neglect" on the part of the defendant. Irwin, 498 U.S. at 96. Absent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the "rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Alvarez-Machain v. United States, 96 F.3d 1246, 1251 (9th Cir. 1996) (tolling two-year limitation period for actions against the U.S. under the Federal Tort Claims Act where the plaintiff, a foreign national, had been incarcerated in the U.S. for over two years); Lewis v. United States, 985 F. Supp. 654, 657 (S.D. W. Va. 1997) (finding circumstances "sufficiently extraordinary" to warrant equitable tolling of new one-year statute of limitations for relief under 28 U.S.C. S 2255 where information charging defendant was "negligently and carelessly prepared" and the government delayed other remedial action). Thus, the government's tolling argument here depends on a finding that Midgley's "breach" of the plea agreement, if indeed it can be so characterized, prevented the government in an "extraordinary way" from exercising its right to prosecute him on the dismissed counts.

In our consideration of tolling, we find it unnecessary to engage, as other courts have, in an analysis of the defendant's conduct under contract principles. See, e.g., Podde, 105 F.3d at 820 (finding defendant certainly voided, and may well have breached, the plea agreement, yet remaining "suspicious of the application of contract law doctrine in favor of the prosecution"); United States v. Anderson, 514 F.2d 583, 587 (7th Cir. 1975) (finding vacated conviction removed "condition precedent" to government's agreement not to prosecute on dismissed charges); Gaither, 926 F. Supp. at 51-52 (finding defendant's successful collateral attack on sentence more analogous to a discharge of performance by supervening impracticability). A party aggrieved by a breach of contract is not entitled per se to relief from a statutory limitation

10

period. Even assuming that Midgley "breached" his agreement here, equitable tolling is appropriate only if the breach constituted an "extraordinary" interference with the government's ability to assert its rights.

Midgley alone did not create the situation of which the government complains. Had it not been for the Supreme Court's decision in Bailey, he would have had no opportunity to "breach" his plea agreement while avoiding prosecution on the remaining charges. While the government makes much of Midgley's three month delay in filing his S 2255 petition, we cannot say that Midgley did not simply take advantage of a serendipitous circumstance created by others. Although Midgley may in fact have frustrated the government's purpose, he did not solely by his own design contrive a "rare situation where equitable tolling is demanded by sound legal principles."

Moreover, our conclusion here does not depend upon an evaluation of the relative equity or good faith exhibited by the parties. Congress has the authority to make a"good faith" exception to S 3282, yet has declined to do so. See Podde, 105 F.3d at 820; Gaither, 926 F. Supp. at 54. While the government has pursued its rights here with diligence and good faith, it is not entitled to equitable tolling of the statute of limitations merely because it is without fault.

C. Potential for Abuse

Lastly, the United States contends that if we fail to create an exception to the statute under the circumstances of this case, defendants will be encouraged to "sit on their rights until the statute has expired on the remaining charges," thus encouraging "gamesmanship of a most offensive nature."6 Although it stops short of accusing Midgley himself of bad faith, the government maintains that Midgley "created the statute of limitations problem" here by delaying the filing of his S 2255 motion until after the expiration of

_____

6. The government borrows this phrase from United States ex rel. Williams v. McMann, 436 F.2d 103 (2d Cir. 1970), where it was held that reinstatement of an indictment should be permitted during the limitations period.

11

the five-year period. The government urges that the inequity of Midgley's tactics, compared to its own diligence in prosecution, warrants tolling of the statute from at least the date of the Bailey decision. While we agree that the government has not been at all dilatory and that Midgley has in fact upset what the government "reasonably understood to be a final disposition of the matter," we nonetheless decline to fashion a tolling rule on this basis.

First, as the Podde court observed, the government may seek to include a clause in future plea agreements whereby the defendant waives the statute of limitations defense as to dismissed counts if the defendant withdraws or challenges the guilty plea after the limitations period on the original charges has expired.7 Podde, 105 F.3d at 821. The government may also in the future negotiate a guilty plea to more than one count. Moreover, the "potential for abuse" complained of here is now substantially reduced because of a recent statutory amendment imposing a limitation period for petitions brought under 28 U.S.C. S 2255.8 Because a

_____

7. See Levine, 658 F.2d at 120-21 ("It is also possible for a defendant knowingly and intelligently to waive the statute of limitations, thus sanctioning a later indictment which, absent such a waiver, would be untimely"); United States v. Meeker, 701 F.2d 685, 688 (7th Cir. 1983) ("The purposes of a time bar are not offended by a knowing and voluntary waiver of the defense by the defendant"). The validity of such waivers is not, however, a question before us, and we will not, therefore, decide it.

8. The Antiterrorism and Effective Death Penalty Act of 1996 adds the following to 28 U.S.C. S 2255:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of --
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

habeas petition must now be filed not later than one year after an intervening change in the law, it is only when less than one year remains of the limitation period on the dismissed counts that a defendant can delay filing until after this limitation period has run.

Finally, we must not forget that "criminal limitation statutes are to be liberally interpreted in favor of repose." Toussie, 397 U.S. at 115 (quoting United States v. Habig, 390 U.S. 222, 227 (1968)). Section 3282 establishes a fixed limitation period with no exception. However tempting it may be to create equitable exceptions to bright line rules, we must concur with Chief Judge Rambo's observation in Gaither that "the very existence of a statute of limitations entails the prospect that wrongdoers will benefit," and that this reason alone cannot serve as the basis for an exception to the statute. Ultimately, the clear and unambiguous rule afforded by the criminal statute of limitations is preferable to a shifting standard based on the perceived equity of the defendant's conduct. While Congress and the courts may continue to weigh competing policy interests concerning the administration of justice, the unqualified limitation period of S 3282 reflects a balance that has already been struck.

III. CONCLUSION

For the foregoing reasons, we will affirm the order of the district court denying the government's motion to reinstate charges against the appellee.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

        (4) the date on which the facts supporting the claim or claims
        presented could have been discovered through the exercise of due
        diligence.

Pub. L. No. 104-132, S 105, 110 Stat. 1214, 1220 (codified as amended at 28 U.S.C. S 2255) (Apr. 24, 1996) (emphasis added).

13