**Prince Adesegun FADAYIRO, Petitioner,**

v.

**UNITED STATES, Respondent.**

Nos. CIV.A. 98–4587 (AJL), CRIM.A. 92–148–02 (AJL).

United States District Court, D. New Jersey.

Nov. 12, 1998.

pal place of business of both EPM and EchoCath. *See* Amended Complaint at ¶¶ 1, 2.

Prince Adesegun Fadayiro, Pekin, IL, pro se.

Paula Dow, Assistant United States Attorney, Newark, NJ, for Respondent.

## OPINION

LECHNER, District Judge.

This is an action brought by the *pro se* petitioner, Prince Adesegun Fadayiro ("Fadayiro"), an inmate at the Federal Correctional Institution in Pekin, Illinois, against the respondent, United States (the "Government"). Currently before the court is the petition of Fadayiro for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255 (the "Petition"), and a motion to toll the statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2255, Pub.L. No. 104–132, tit. I,

§ 105(2), 110 Stat. 1220 (24 April 1996) (the "AEDPA") for 28 U.S.C. § 2255 (the "Motion").[1]

For the reasons set forth below, the Petition is dismissed. Because the Petition is dismissed, the Motion is moot.

*Facts*

In 1992, a federal grand jury indicted Fadayiro and eight other defendants in a four-count, second superceding indictment (the "Indictment"). Fadayiro was named in count one ("Count One") and count two ("Count Two") of the Indictment. Count One of the Indictment charged Fadayiro with conspiracy to import more than three kilograms of heroin in violation of 21 U.S.C. §§ 952(a), 960 and 963. *See* Indictment. Count Two of the Indictment charged Fadayiro with conspiracy to possess with intent to distribute more than three kilograms of heroine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See id.*

On 3 November 1995, Fadayiro was convicted by jury verdict on Counts One and Two. On 25 April 1996, Fadayiro was sentenced to 141 months imprisonment, to be followed by a five-year term of supervised release, a fine in the amount of $4,000 and a special assessment of $100. A judgment of conviction and sentence (the "Judgment") was entered on that day.

On 6 May 1996, Fadayiro filed an appeal (the "Appeal") of the Judgment. *See* Notice of Appeal. On 24 April 1997, in a memorandum opinion, the Third Circuit affirmed the Judgment and denied the Appeal in all respects. *See United States v. Fadayiro,* App. No. 96–5290, 1997 WL 228720 (3d Cir. Apr. 24, 1997). On or about 3 June 1997, the Third Circuit denied a petition for rehearing.

Fadayiro then filed a petition for a writ of certiorari with the Supreme Court, which was denied on 6 October 1997. *See* Petition at 3; Motion at ¶ 2.

On 5 October 1998, Fadayiro filed the Petition. In the Petition, Fadayiro raises four grounds why the Judgment should be vacated:

Ground one: Denial of effective assistance of counsel and a right to trial counsel. . . .

Ground two: Conviction obtained by a violation of constitutional [right to a] speedy trial. . . .

Ground three: Sentence imposed by a violation of Due Process Clause and Establishment Clause. . .

Ground four: Denial of effective appellate review and a right to appellate counsel. . . .

*See* Petition at 5–6. Significantly, the Petition does not assert that the Government prevented him from filing the Petition at an earlier date or that the Supreme Court has recognized a new right that is retroactively applicable to this case or that new facts were discovered since the entry of the Judgment.

*Discussion*

A. *Standard of Review for Pro Se Submissions*

■ *Pro se* submissions, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (holding *pro se* petition cannot be held to same standard as pleadings drafted by attorneys); *Lewis v. Attorney General of United States,* 878 F.2d 714, 722 (1989).

■ When receiving a *pro se* submission from a habeas petitioner, the habeas petition and any supporting submissions must be con-

---

1. In support of the Motion, Fadayiro submitted: "Motion to Toll Time–Limit Under 28 U.S.C. [§] 2255 Statute of Limitation Pursuant to A.E.D.P.A. Act of 1996."

In support of the Petition, Fadayiro submitted: the Petition; and "Motion for Leave to Submit a Memorandum with Exhibits in Support of Motion Under 28 U.S.C. [§] 2255 Within 30 Days."

strued liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir.1998); *Lewis*, 878 F.2d at 721; *United States v. Brierley*, 414 F.2d 552, 555 (3d Cir.1969)("We should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.' It is the policy of courts to give a liberal construction to pro se habeas petitions.") (citations omitted) *cert. denied*, 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970); *see also Neitzke v. Williams*, 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines*, 404 U.S. at 520, 92 S.Ct. 594; *Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir.1990).

## B. *Petition Pursuant to 28 U.S.C. § 2255*

### 1. *Statute of Limitations*

The AEDPA amended Section 2255 of Title 28 of the United States Code ("Section 2255") to include, among other things, a one-year limitations period for filing habeas petitions. *See* 28 U.S.C. § 2255; *see also Burns v. Morton*, 134 F.3d 109, 111–12 (3d Cir. 1998); *United States v. Hatcher*, No. 94–173–1, 1997 WL 698488, at *1 (E.D.Pa. Nov.7, 1997); *Kapral v. United States*, 973 F.Supp. 495, 497 (D.N.J.1997).

Prior to 24 April 1996, the effective date of the AEDPA,[2] federal prisoners were given virtually unlimited time in which to file habeas petitions after their convictions became final. *See United States v. Benson*, No. 97–4783, 1998 WL 23168, at *1 (E.D.Pa. Jan.6, 1998); *Hatcher*, 1997 WL 698488, at *1. Following the enactment of the AEDPA, however, federal prisoners must file their habeas petitions within one year from the latest of one of the following four events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2255 (emphasis added); *Hatcher*, 1997 WL 698488, at *1.

Concerned with the retroactive effect of the AEDPA, the Third Circuit has stated habeas petitions filed before the effective date of the AEDPA—24 April 1996—"may not be dismissed for failure to comply with § 2255's one-year period of limitations." *Burns*, 134 F.3d at 111–12. Petitions filed on or after 24 April 1997, however, must comply with the one-year limitations period. *See Dietsch v. United States*, 2 F.Supp.2d 627, 635 (D.N.J.1998); *Turner*, 994 F.Supp. 631, 633; *Hatcher*, 1997 WL 698488, at *2; *Kapral*, 973 F.Supp. at 497.

Because of additional concerns about the retroactive effect of the AEDPA, this Circuit has also stated that prisoners whose convictions became "final" before the effective date of the AEDPA had until 24 April 1997 to file petitions for relief. *See United States v. Urrutia*, No. 97–7051, 1997 WL 628217 (3d Cir. Sept. 15, 1997); *Benson*, 1998 WL 23168, at *2; *United States v. Angel*, Nos. 98–CV–1392, 94–CR–189, 1998 WL 181938, at *2 (E.D.Pa. Apr. 15, 1998); *Hatcher*, 1997 WL 698488, at *2. Prisoners whose convictions became "final" on or after the effective date of the AEDPA must file their petitions within one year of their convictions becoming "final." *See* 28 U.S.C. § 2255; *Kapral*, 973 F.Supp. at 497.

**2.** The AEDPA does not contain an express effective date. As such, courts have held that the effective date is 24 April 1996, the day the President signed the bill into law. *See Burns*, 134 F.3d at 111; *United States v. Simmonds*, 111 F.3d 737, 745 n. 10 (10th Cir.1997) (citing *Go-*zlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996)); *Turner v. Keller*, 994 F.Supp. 631, 633 (W.D.Pa. 1998); *Kapral*, 973 F.Supp. at 497.

In the instant case, as mentioned, Fadayiro was convicted on 3 November 1995 and sentenced on 25 April 1996. The conviction of Fadayiro was not "final," however, until after the effective date of the AEDPA. As a result, Fadayiro was required to file the Petition within the one-year limitations period established by the AEDPA. *See Kapral,* 973 F.Supp. at 497.

In the Motion, Fadayiro contends the limitations period expired on 6 October 1998, "[one] year from the date of [c]ertiorari denied." *See* Motion at ¶ 4. Without directly addressing the limitations period of Section 2255, Fadayiro automatically assumes the denial of certiorari is the triggering date on which the conviction becomes "final" under Section 2255. *See id.* As discussed below, this assumption is wrong.

Neither the AEDPA nor Section 2255 defines when a judgment of conviction becomes "final." *See* 28 U.S.C. § 2255; *see also Kapral,* 973 F.Supp. at 497; *United States v. Dorsey,* 988 F.Supp. 917, 918 (D.Md.1998). To date, the definition of "finality" has not been addressed by the Third Circuit, and there appears to be no consensus in the case law. Indeed, courts have identified several possible dates on which a judgment of conviction may be deemed "final" for purposes of Section 2255. These dates include the date on which the trial court enters a judgment and sentence, the date after which the petitioner could no longer file an appeal with the Circuit court, if no appeal was filed, the date of the decision of the Circuit court, if an appeal was filed, and the date after which the petitioner could no longer petition the Supreme Court for a writ of certiorari or denial of such petition. *See Dietsch,* 2 F.Supp.2d at 635; *Kapral,* 973 F.Supp. at 497 (citing *Clarke v. United States,* 955 F.Supp. 593, 595 (E.D.Va.1997), *vacated,* 162 F.3d 1156, 1998 WL 559754 (4th Cir. Sept.2, 1998)); *Hatcher,* 1997 WL 698488, at *1; *United States v. Bazemore,* 929 F.Supp. 1567, 1569 (S.D.Ga. 1996).

A few courts have defined a final judgment of conviction as the date derived from a certiorari petition. These courts have held that a judgment of conviction becomes "final" on the date a petitioner can no longer seek direct review [3] by the Supreme Court. *See Simmonds,* 111 F.3d at 744 ("[C]onviction became 'final' after the Supreme Court denied certiorari...."); *Calderon,* 128 F.3d at 1286 (conviction became final when process of direct review came to end); *Dorsey,* 988 F.Supp. at 918 (conviction becomes final on date petitioner can no longer pursue direct appeal); *Clarke,* 955 F.Supp. at 595 ("For the sake of this motion only, this Court will assume ... the [final] date [as that] on which petitioner could no longer seek direct review by the Supreme Court.").

One court has observed:

There appears to be a growing consensus in the case law that a conviction becomes 'final' ... on the date when the petitioner could no longer seek direct review .... The consensus opinion ... comports with prior federal law on the timing of 2255 motions. Although the language of § 2255 itself does not obligate a petitioner to complete any direct review before filing a 2255 motion, the courts have created such a requirement in the interests of efficient administration of justice .... This requirement avoids redundancy of effort between direct appeal and collateral attack. It would therefore make little sense to require a petitioner to file the 2255 motion prior to the completion of any direct appeal.

*Dorsey,* 988 F.Supp. at 918–19. In this Circuit, only one district court has adopted this definition of "final," *see Angel,* 1998 WL 181938, at *2,—far from a consensus.

Several district courts in this Circuit, by contrast, have held that a judgment of conviction becomes "final" for purposes of Section 2255 either on the date the Circuit renders a decision on a petitioner's judgment of conviction or at the close of the appeal period following sentencing. *See Benson,* 1998 WL

---

**3.** The process of "direct review" or "direct appeal," as interpreted by these courts, appears to include a petition for certiorari to the Supreme Court. *See Calderon,* 128 F.3d at 1286 & n. 2; *Dorsey,* 988 F.Supp. at 918. A "direct appeal *of right,*" however, concerns only an appeal to the Circuit court.

23168, at *1; *Kapral,* 973 F.Supp. at 497; *United States v. Vancol,* 972 F.Supp. 833, 834 (D.Del.1997); *United States v. Rienzi,* Nos. 92–33–1, 96–4829, 1996 WL 605130, at *1 n. 7 (E.D.Pa. Oct.21, 1996) ("[W]e assume ... that the judgment here became final when our Court of Appeals rejected plaintiff's direct appeal...."); *Nixon v. United States,* No. 96–5048, 1996 WL 539786, at *1 (E.D.Pa. Sept.17, 1996) (assuming judgment became final when Circuit court issued its mandate affirming conviction where petitioner did not petition Supreme Court for writ of certiorari).

The legislative history of the AEDPA supports the predication of finality on the date of the decision of the Circuit court. *See* H .R. Rep. No. 104–23 (1995)(evidencing Congressional intent to "reduce the abuse of habeas corpus that results from delayed and repetitive filings" while preserving availability of expediently sought review); H.R. Conf. Rep. No. 104–518, tit. I (1996); *see also Kapral,* 973 F.Supp. at 497–98.

The *Kapral* court, upon reviewing the relevant legislative history, concluded the following definition of finality best comported with the purpose behind the AEDPA:

> Defining the date of final judgment of conviction as the date of the appeals court's decision facilitates the congressional intent underlying the AEDPA. Specifically, it counters habeas corpus abuse by definitively limiting the time in which a prisoner may seek § 2255 review, while simultaneously providing ample opportunity for the prisoner to exercise the right to seek relief under § 2255.

*Kapral,* 973 F.Supp. at 497–98. The court recognized, however,

> defining final judgment of conviction as the date of the appeals court decision, in lieu of a date derived from a certiorari petition, bars more petitioners' claims from decisions on the merits.

*Id.* at 498 n. 4. The consequential curtailment of habeas corpus petitions notwithstanding, the court reasoned "this increased foreclosure of claims is not overly burdensome or onerous. Petitioners have a full year to devote to the preparation of their § 2255 motions." *Id.*[4]

The date on which the trial court enters a judgment and sentence is yet another occurrence on which a judgment of conviction may be deemed final. *See Dietsch,* 2 F.Supp.2d at 635; *Bazemore,* 929 F.Supp. at 1569–70. This appears to be the least palatable alternative, however. To force a petitioner to prepare a petition for habeas relief within one year of his or her sentence can be unduly burdensome. The time constraints imposed upon petitioners to file their petitions would effectively foreclose the right of a petitioner to a direct appeal. As one court has observed:

> The opportunity to challenge a conviction to the appeals court constitutes an appeal of right. To begin running the statute of limitations ... at sentencing would inhibit the petitioner's opportunity to exercise this appeal of right; it would obligate the petitioner to divert attention toward preparing a § 2255 motion, rather than toward preparing an appeal.

*Kapral,* 973 F.Supp. at 498.

■ To best effectuate congressional intent, finality of a judgment of conviction under Section 2255 must be based upon the intermediate stage of appellate review—the date of the decision of the Circuit affirming the judgment of conviction. As mentioned, defining finality as the date the Circuit renders a decision minimizes abuse of habeas procedures by limiting the time in which a frivolous petition may be filed. *See* H.R.Rep. No. 104–23 (1995). At the same time, this definition allows a petitioner appropriate appellate review, as well as ample opportunity to exercise his or her statutory rights under Section 2255. *See id.* Petitioners are not faced with unfair time constraints—they have

---

4. Another court in the district assumed a middle ground between the competing approaches discussed. In *Nixon,* the court noted the habeas petitioner did not petition the Supreme Court for a writ of certiorari. The court "therefore assume[d] that [the habeas petitioner's] judgment became final when the Court of Appeals issued its mandate affirming his conviction." *Nixon,* 1996 WL 539786, at *1. This fact-specific analysis left open the possibility of a different determination in situations in which a habeas petitioner petitions the Supreme Court.

a year from the date the court of appeals affirms the judgment of conviction in which to file a habeas petition.

A conviction of a petitioner should be "final" upon the denial of a direct appeal of right, not upon the denial of a discretionary appeal. In declining to define final judgment of conviction based on a petition to the Supreme Court for certiorari, one court explained:

> In exercising this discretion, the Supreme Court rarely grants certiorari in sentencing cases. In addition, having exercised the appeal of right, the petitioner has had a fair opportunity to present his federal claims in an appellate forum.

*Kapral,* 973 F.Supp. at 498. *But see Dorsey,* 988 F.Supp. at 919 n. 1.

■ The likelihood that the Supreme Court would grant certiorari to a prisoner challenging a conviction is virtually nil. Translated into numbers, an average petitioner for certiorari has approximately only a one percent chance of being granted review. A petitioner seeking to overturn his or her conviction is granted certiorari even more infrequently—only approximately .45 percent of the time. *See Kapral,* 973 F.Supp. at 498 n. 6 (citing Stephen R. McAllister, Practice Before the Supreme Court of the United States, 64–APR J. Kan. B. Ass'n 25, 26–27 (1995)). Extending the time in which to file a petition under Section 2255 to the date of denial of certiorari ignores reality; Supreme Court review is virtually non-existent in these matters.[5]

To force a habeas petitioner to complete the generally futile exercise of filing a petition for certiorari to the Supreme Court exalts form over substance. The Rules Governing Section 2255 Proceedings for the United States District Courts (the "Rules") dictate that writs of habeas corpus be accorded priority. *See* Rule 4, 28 U.S.C. § 2255. Defining the finality of a judgment of conviction as the date of the denial of certiorari is inconsistent with the Rule directing expedited disposition of habeas petitions. Such a definition serves only to further delay judicial review of habeas petitions by requiring the habeas petitioner to pursue the usually unfruitful exercise of filing a petition for certiorari. The prioritization of habeas corpus review demands review of the habeas petition at the earliest reasonable date. A prompt review is facilitated by permitting a habeas petition be filed after the Circuit decision.

Interpreting the finality of a judgment of conviction to mean the date of the decision of the Circuit court is especially appropriate where, as here, the Circuit also denied a petition for rehearing. Pursuant to the Internal Operating Procedures for the United States Court of Appeals for the Third Circuit, dated October 1997, (the "Internal Operating Procedures"), an order granting a panel rehearing will only be entered "if two [of the three] members of the panel vote for panel rehearing." *See* Internal Operating Procedures at 8.3.1. In this case, in light of the denial of the petition for rehearing by the Circuit, the reality is even more plain; it is unlikely the Supreme Court would grant certiorari.

■ Because the Judgment became final on the date of the decision of the Circuit, the Petition is untimely. As discussed, the Judgment was entered on 3 November 1995. On 24 April 1997, the Circuit affirmed the Judgment. *See Fadayiro,* No. 96–5290, 1997 WL 228720. As such, Fadayiro had one year from 24 April 1997, i.e., 24 April 1998, in which to file the Petition. Even if the date of the denial of the petition for rehearing, 3 June 1997, is used, Fadayiro is too late. The Petition was filed on 5 October 1998.

The Petition was not filed in a timely fashion and must be denied in accordance with Section 2255. *See* 28 U.S.C. § 2255; *see also Turner,* 994 F.Supp. 631, 633 (finding petition signed on 13 May 1997 to be untimely where conviction and sentence were affirmed on 5 February 1990); *Hatcher,* 1997 WL 698488, *2 (finding petition filed on 10 June 1997 to be untimely where conviction and sentence were affirmed on 2 November 1995); *Collison v. United States,* No. 97–

---

5. The rare instances in which the Supreme Court grants certiorari to a habeas petitioner would constitute "extraordinary circumstances" which, as discussed below, warrant equitable tolling of the statute of limitations.

3026, 1997 WL 602777, at *2 (E.D.Pa. Sept.22, 1997) (finding petition filed on 28 April 1997 to be untimely where conviction and sentence became final on 24 May 1993); *Kapral,* 973 F.Supp. at 497 (finding petition filed on 29 April 1997 to be untimely where conviction and sentence were affirmed on 6 February 1996). In light of the untimeliness of the Petition, the merits of the Petition need not be addressed. *See Dietsch,* 2 F.Supp.2d at 637; *Kapral,* 973 F.Supp. at 500.

### 2. *Equitable Tolling*

In the Motion, Fadayiro contends he is entitled to a tolling of the one-year limitations period under Section 2255. Fadayiro proffers two justifications for such tolling: first, Fadayiro states he is not yet in possession of transcripts "and other records needed for the filing of his 2255 petition." *See* Motion at ¶ 5(a). Second, Fadayiro states he presently is in custody and works full-time in prison and "[p]rison officials are not providing legal idle from prison-work for plaintiff to prepare a timely adequate petition." *See id.* at ¶ 5(b).

■ The limitations period in the AEDPA has been interpreted as a statute of limitations which is amenable to equitable tolling, rather than a jurisdictional bar which precludes equitable modification. *See Miller v. N.J. Dep't of Corrections,* 145 F.3d 616, 617 (3d Cir.1998); *Dietsch,* 2 F.Supp.2d at 635; *Peterson v. Brennan,* No. 97–CV–2477, 1998 WL 470139, at *8 n. 11 (Aug. 11, 1998)(slip op.). Because the limitations period in the AEDPA is not considered a limit on the subject matter jurisdiction of the district courts, it is subject to tolling and waiver.[6] *See Miller,* 145 F.3d at 617; *United States v. Gould,* No.97–3090, 1997 WL 535821, at *3 (E.D.Pa. July 29, 1997) (citing *Calderon v. United States Dist. Ct.,* 112 F.3d 386 (9th Cir.1997)).

■ Equitable tolling of the limitations period of Section 2255 is warranted in limited circumstances. In that regard, the Circuit has provided guidance:

> [W]e observe that equitable tolling is proper only when the principles of equity would make [the] rigid application [of a limitations period] unfair. Generally, this will occur *when the petitioner has in some extraordinary way ... been prevented from asserting his or her rights.* The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618–19 (internal citations omitted)(emphasis added); *see Dietsch,* 2 F.Supp.2d at 635 (quoting *Calderon,* 128 F.3d at 1288)("The limitations period should be tolled ... only if 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.' ").

The Circuit has also recently addressed the applicability of equitable tolling to criminal statutes of limitations in general:

> Equitable tolling may be appropriate if ... the plaintiff has in some extraordinary way been prevented from asserting his rights.... There is no reason to distinguish between the rights protected by criminal and civil statutes of limitations. Federal courts invoke the doctrine of equitable tolling 'only sparingly[.]' ... [A] statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice.

*United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)(internal citations omitted).

■ As stated, Fadayiro contends both the delay in the receipt of transcripts and his time-commitments in prison prevented him from preparing a timely petition. These concerns of Fadayiro—even if true—do not provide a sufficient basis for tolling the statute of limitations. These circumstances do not constitute "extraordinary circumstances" which justify equitable tolling.

---

**6.** The other Court of Appeals to address the tolling issue similarly held the one-year limitations period of the AEDPA is a statute of limitations subject to equitable tolling. *See Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1289 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998).

The non-extraordinary nature of the delay in obtaining transcripts is evidenced by the fact that "a federal prisoner seeking collaterally to attack his [or her] conviction is not [automatically] entitled to free transcripts." *See United States v. Marias,* No. 92–CR–256–2, 1995 WL 221353, at \*1 (E.D.Pa. Apr.13, 1995)(citing *United States v. MacCollom,* 426 U.S. 317, 325–26, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976)); *see also Oliver v. Zimmerman,* 720 F.2d 766 (3d. Cir.), *cert. denied,* 465 U.S. 1033, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984); *United States v. Shumate,* No. 91–CR–321–17, 1995 WL 222001, at \*1, (E.D.Pa. Apr.13, 1995).

Pursuant to 28 U.S.C. § 753(f) ("Section 753(f)"), which governs the furnishing of transcripts requested by parties and the collection of fees associated therewith,

> [f]ees for transcripts furnished in proceedings brought under section 2255 of this title *to persons permitted to sue or appeal* in forma pauperis shall be paid by the United States out of money appropriated for that purpose *if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.*

28 U.S.C. § 753(f)(emphasis added). In *MacCollom,* the Supreme Court upheld the constitutionality of Section 753. *See* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666. The Court concluded the right of a petitioner to equal access to procedures for review of his or her conviction was satisfied where the petitioner was only afforded a free transcript upon a showing of particularized need. *See id.* at 326, 96 S.Ct. 2086; *see also Sistrunk v. United States,* 992 F.2d 258, 259–60 (10th Cir.1993)(citing *MacCollom* for proposition that absent particularized need, indigent habeas petitioner "[is] not entitled to a free copy of his [or her] transcript"); *Schaeffer v. Consoli,* No. 91–CV–4274, 1991 WL 155290, at \*1 (E.D.Pa.31 July 1991)(citing *MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666)("A request for a trial transcript is not a matter of right unless an individual is pursuing a direct appeal of his criminal conviction. If a plaintiff is seeking these transcripts for a collateral attack on his [or her] conviction, he [or she] must demonstrate need.").

Section 753(f) prevents the situation in which an indigent prisoner obtains a free transcript merely "to search for error in an attempt to generate a basis for collaterally attacking a conviction." *See Marias,* 1995 WL 221353, at \*1; *see also Oliver,* 720 F.2d at 771; *United States v. McCleary,* No. 91–CR–321–09, 1994 WL 597654, at \*1 (E.D.Pa. Oct.31, 1994). In light of *MacCollom* and Section 753(f), the right of a habeas petitioner to a free transcript is not "a necessary concomitant" of the writ of habeas corpus. *See MacCollom,* 426 U.S. at 322–23, 96 S.Ct. 2086; 28 U.S.C. § 753(f).

The delay in the receipt of free transcripts, moreover, is not an "extraordinary circumstance" justifying equitable tolling of the limitations period established by the AEDPA. It has recently been held:

> [A habeas petitioner's] difficulty in obtaining ... transcripts is not an 'extraordinary circumstance' that justifies tolling the period of limitations because a prisoner is not entitled to transcripts for the purpose of preparing a motion under 28 U.S.C. § 2255.

*United States v. Agubata,* Nos. 97–CV–3629, 94–CR–0037, 1998 WL 404303, at \*3 (D.Md. 9 July 1998)(citing 28 U.S.C. § 753(f) and *MacCollom,* 426 U.S. at 321, 96 S.Ct. 2086).

Fadayiro does not have an automatic right to free transcripts. *See* 28 U.S.C. § 753(f); *MacCollom,* 426 U.S. at 325–26, 96 S.Ct. 2086. Additionally, any delay in his receipt of free transcripts does not, "in some extraordinary way," prevent Fadayiro from asserting his rights. *See Agubata,* 1998 WL 404303, at \* 3; *see also Miller,* 145 F.3d at 618–19.

As to the second concern of Fadayiro, full-time prison work does not form the basis to assert a reason for a failure to timely file a habeas petition. Again, Fadayiro had one year after the Circuit affirmed the Judgment in which to prepare the Petition.

Significantly, Fadayiro has not alleged any of the criteria set forth in the statute to extend the limitations period of Section 2255.

*See* 28 U.S.C. § 2255.[7] Neither the Motion nor the Petition alleges that the Government prevented Fadayiro from filing the Petition at an earlier date or that the Supreme Court has recognized a new right that is retroactively applicable to this case or that new facts were discovered since the entry of the "Judgment. *See id.* An independent review of the Motion and the Petition does not reveal that any of these circumstances are present in this case. An extension of time therefore is not warranted under the express terms of Section 2255. *See United States v. Smith,* 966 F.Supp. 408, 409 (E.D.Va.1997).

█ That Fadayiro may have been unaware of the new limitations period of Section 2255 also is not sufficient to toll the statute of limitations. Ignorance of the law does not justify equitable tolling of a statute of limitations. *See School Dist. of City of Allentown v. Marshall,* 657 F.2d 16, 21 (3d Cir.1981); *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir.1991). This rule of law has been applied to habeas petitioners who proffer ignorance of the limitations period established by the AEDPA as grounds for equitable tolling. *See Agubata,* 1998 WL 404303, at *3 (habeas petitioner's unawareness of new limitations period of Section 2255 insufficient to toll the one-year limitations period); *Brown v. Superintendent, Elmira Correctional Facility,* No. 97–CV–3303, 1998 WL 75686, at *4 (S.D.N.Y. Feb.23, 1998)(refusing to excuse habeas petitioner from limitations period created by the AEDPA or toll such period based on "self-serving statement that the litigant is ignorant of the law").

Additionally, concerns of retroactivity preclude only the application of a new statute of limitations to petitions filed or convictions finalized before its effective date. *See Burns,* 134 F.3d at 111–12; *Urrutia,* No. 97–7051, 1997 WL 628217 (3d Cir. Sept. 15,

1997); *Kapral,* 973 F.Supp. at 499; *Vancol,* 972 F.Supp. at 834. A new interpretation of an existing statute of limitations does not, however, foreclose application of the statute to a prisoner whose petition is filed and whose conviction becomes final *after* the effective date. *See Benson,* 1998 WL 23168, at *2 (where motion filed after effective date of AEDPA and over one year after the conviction became final on the close of the appeal period following sentencing, motion deemed untimely); *see also Vernon v. Cassadaga Valley Central School Dist.,* 49 F.3d 886, 890 (2d Cir.1995)(citing *Landgraf v. USI Film Products,* 511 U.S. 244, 276–78, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994))("Retroactivity concerns ... generally do not bar the application of a changed statute of limitations to a complaint filed after the amendment.").

Fadayiro, whose Petition was filed and whose conviction became final *after* the effective date of the AEDPA, meets none of the "retroactivity exceptions" carved out of the AEDPA. *See Benson,* 1998 WL 23168, at *2 (where habeas petitioner "[did] not meet any of the exceptions of the [AEDPA], the motion will be denied because of its untimeliness"); *see also Burns,* 134 F.3d at 111–12; *Urrutia,* No. 97–7051, 1997 WL 628217 (3d Cir. Sept. 15, 1997); *Kapral,* 973 F.Supp. at 499; *Vancol,* 972 F.Supp. at 834.

*Conclusion*

For the reasons discussed, the Petition is dismissed.

---

7. As mentioned, the limitations period of Section 2255 runs from the latest of
  (1) the date on which the judgment of conviction becomes final;
  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence ....
28 U.S.C. § 2255.